FILED

05/20/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 19-0304

**SYNOPSIS OF THE CASE**

**2020 MT 131:** **OP 19-0304, MARY ANN MURRAY** and **LIGE M. MURRAY,** Plaintiffs, Counter-Defendants, and Appellees, v. **BEJ MINERALS, LLC,** and **RTWF LLC, (**hereinafter BEJ**),** Defendants, Counter-Claimants, and Appellants.[1]

The Montana Supreme Court accepted a certified question from the United States Court of Appeals for the Ninth Circuit asking whether, under Montana law, dinosaur fossils constitute "minerals" that transfer with the mineral estate under a general mineral reservation deed. The Court answered the question no.

BEJ were the original owners of a sizeable farm and ranch in Garfield County. BEJ began leasing the land to the Murrays in 1983 for the Murrays to ranch. In 2005, the Murrays purchased the surface estate of the property and continued to ranch and farm the land. BEJ retained nearly all of the mineral estate. Beginning in 2005, the Murrays happened upon a "spike cluster" fossil on their property. Following their initial discovery, the Murrays found other valuable dinosaur fossils, including the fossilized remains of two dinosaurs locked in combat (the Dueling Dinosaurs); a large Triceratops foot; a large Triceratops skull; and the nearly complete fossilized remains of a Tyrannosaurus rex (Murray T. Rex). The dinosaur fossils are a huge scientific discovery, extremely rare, and highly valuable; for instance, the Dueling Dinosaurs and Murray T. Rex are each worth several million dollars. In 2013, BEJ, because it holds majority title to the mineral estate, claimed it owned a portion of the fossils. The deed reserving the mineral estate to BEJ does not refer to dinosaur fossils or whether fossils are considered minerals owned by the mineral titleholder.

The Court, reaffirming its precedent, held that the "end goal when analyzing a general mineral reservation is to interpret the term 'minerals' according to its 'ordinary and natural meaning,' unless the parties manifest a different intention in the transacting document." The Court held that unlike oil, gas, and hydrocarbons, fossils are not valuable as raw material to be processed into fuel or goods. The ordinary and natural meaning of "mineral" is more commonly thought of as a resource, often nonrenewable, including hard compounds, oil, or gas, which are mined as raw material for further processing, refinement, and eventual economic exploitation. The Court considered that the rarity and value of dinosaur fossils is not related to their mineral composition or their usefulness for further refinement and economic exploitation. Rather, dinosaur fossils are valuable

---

[1] This synopsis was prepared for the convenience of the reader. It constitutes no part of the Opinion of the Court and may not be cited as precedent.

because of their very existence as the remains of once-living organisms. Unlike a mineral which is mined, processed, and developed, fossils' value depend on the completeness of the specimen, the species of dinosaur, and how well the fossil is preserved. The Court also considered the impact of removing dinosaur fossils on the surface estate. Fossils are closely related to the top of the land's surface and often are easily exposed through natural events. Fossils are not mined, but rather are excavated. A large-scale excavation would interfere with the use and value of the surface estate, by rendering the surrounding surface useless for agricultural and grazing purposes. Farmers' and ranchers' investments in the surface of their property should be just as consequential and protected as other individuals' investments in mineral estates. After considering all of these factors, the Court declined to oversimplify its established precedent by excluding relevant considerations and stretching the term "mineral" so far outside of its ordinary and natural meaning as to include dinosaur fossils.

The dissenting opinion argued that the Court failed to follow its own clear, well-settled precedent under which a substance is a "mineral" for purposes of a mining reservation if: 1) minerals comprise the substance at issue; and 2) the substance is rare and exceptional in character or possesses a peculiar property giving it special value. The fossils in question plainly meet that test. Under the Court's new analysis, the fossilized dinosaur bones, having 100% mineral composition, do not meet the first prong of the test. Because the Legislature has resolved the question of dinosaur fossils for future cases, the dissenters criticized the Opinion for crafting a new, convoluted, and opaque three-factor test that in the future will spawn more questions than it answers.